**In re Martin J. McALPIN, Debtor.**

**Martin J. McAlpin, Plaintiff,**

v.

**Educational Credit Management Corporation, Defendant.**

**Bankruptcy No. 93–46545.
Adversary No. 00–4086.**

United States Bankruptcy Court,
D. Minnesota.

Oct. 26, 2000.

Ian Traquair Ball, Minneapolis, MN, for plaintiff.

Julie K. Swedback, Curtis P. Zaun, St. Paul, MN, for defendant.

## ORDER FOR DECLARATORY JUDGMENT AND INJUNCTION

ROBERT J. KRESSEL, Bankruptcy Judge.

This proceeding came on for trial on the plaintiff's complaint seeking injunctive relief and actual, compensatory and punitive damages. Ian Traquair Ball appeared for the plaintiff, and Julie K. Swedback and Curtis P. Zaun appeared for the defendant.

This court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. §§ 157(b)(1) and 1334(a) and Local Rule 1070–1. This is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2)(B) and (O).

1. The loans were incurred pursuant to four (4) promissory notes executed by McAlpin, each in the amount of $2,500.00. Interest

## INTRODUCTION

This action concerns the effect of my previous order determining the claim of defendant, Educational Credit Management Corporation. The parties stipulated to the facts and the exhibits submitted at trial. No witnesses testified.

## FACTS

McAlpin filed a petition under Chapter 13 of the Bankruptcy Code on November 17, 1993. Included in his schedule of liabilities, McAlpin listed four (4) student loans incurred between 1982 and 1985.[1] These loans were guaranteed by Higher Education Assistance Foundation. Upon HEAF's insolvency, McAlpin's student loans were transferred to the United States Department of Education, which in turn assigned the loans to Transitional Guaranty Agency on May 5, 1994. In May 1995, TGA changed its name to ECMC.

On November 30, 1994, TGA filed a proof of claim, dated November 28, 1994, in McAlpin's Chapter 13 case. The total amount of the proof of claim was $19,-977.43; which included principal of $13,-340.65, prepetition interest of $1,612.80, and collection costs and fees of $5,023.98.

In a letter dated August 19, 1996, McAlpin's attorney requested that TGA provide "an itemized statement of the collection costs and fees incurred in connection with the [student] loan[s], including dates, work item performed, and hourly rate or other unit cost used by your agency." This letter further requested that TGA amend its proof of claim "[i]f the collection costs and other fees [did] not total the amount claimed . . . ."

In a letter dated September 12, 1996, ECMC responded to McAlpin's August 19, 1996, letter by stating its authority, under federal regulations, to assess collection costs when the agency pays a defaulted claim. ECMC's response did not include

was fixed at an annual rate of nine (9) percent.

the itemized statement requested by McAlpin. ECMC's claim was never amended.

McAlpin's modified Chapter 13 plan was confirmed on January 22, 1997. Neither the original plan nor the modified plan provided for any payments to TGA or ECMC. On January 27, 1999, after completing his plan, McAlpin received a discharge.

### The Claim Objection

On January 29, 1999, McAlpin filed an objection to the proof of claim filed by TGA. The objection acknowledged that the principal and interest amounts of the student loans were owing, but disputed the collection costs and fees portion of the claim. McAlpin thus sought a disallowance of $5,023.98 of defendant's claim.

The objection did not dispute defendant's authority to include collection costs as part of its claim, instead, McAlpin challenged the *amount* sought as being excessive. The objection asserted that the collection costs and fees were not the actual costs incurred by defendant, nor the "average cost." Debtor's Memorandum of Law filed in support of the claim objection noted McAlpin's efforts to obtain an explanation and itemization of the collection costs and fees, and McAlpin's request that defendant's claim be amended if the actual costs did not total the amount sought. McAlpin further stated that:

> [T]o the best of Debtor's knowledge, neither HEAF nor TGA initiated any action in state or federal court to collect on the student loan, nor did either agency refer the loan to a collection agency.... [T]he only administration undertaken by TGA ... was filling out a claim form and [filing] it [with] the bankruptcy court.... While 34 C.F.R. § 674.45(e) et seq. permits the imposition of collection costs upon a borrower, they must be reasonable and they must

be limited to either the actual cost incurred or the average cost incurred for similar actions taken to collect loans in similar stages of delinquency.

Thus, McAlpin requested that the entire amount claimed by defendant for collection costs and fees, $5,023.98, be disallowed as that amount was neither the actual nor average cost defendant may have incurred to complete and file a bankruptcy proof of claim form. McAlpin maintained that ECMC had failed to provide any documentation demonstrating otherwise.

ECMC did not file any response to McAlpin's claim objection. A hearing on the objection was scheduled for March 2, 1999. ECMC did not file any response to the objection or appear at this hearing. ECMC concedes that it received notice of the objection to its claim.[2]

By order dated March 4, 1999, I allowed defendant's claim in the amount of $14,953.45: this amount is the sum of defendant's claim ($19,977.43), minus the collection costs and fees sought therein ($5,023.98), which were disallowed. The order was based upon my "review of the claim and the objection."

### ECMC's Collection Efforts

Thereafter, ECMC contacted McAlpin regarding collecting the nondischarged principal, pre- and post-petition interest, and the collection costs and fees. By letter dated October 21, 1999, McAlpin's counsel advised ECMC that the collection costs were disallowed by the bankruptcy court. In a letter dated November 5, 1999, ECMC replied stating that "the disallowance of a claim ... results in the creditor not participating in any distribution of the bankruptcy estate, it does not determine the debt to be dischargeable." McAlpin asserts, and ECMC does not dispute, that ECMC continued to seek to

---

**2.** In its trial brief, ECMC states that it did not respond to the claim objection "because the Chapter 13 plan had concluded, the discharge order had been entered, and it stood to gain nothing financially." Defendant's Trial Memorandum at 4.

collect the disallowed collection costs and fees from McAlpin.

On November 24, 1999, at McAlpin's request, I reopened his bankruptcy case. On April 24, 2000, McAlpin filed this adversary proceeding seeking injunctive relief barring ECMC from further collection efforts to obtain payment of the collection fees and costs which were "disallowed" by my prior order. McAlpin also seeks actual, compensatory and punitive damages. ECMC filed its answer on May 24, 2000, and counterclaimed for attorney fees and costs. As resolution of this matter concerns the effect of my prior order, both parties effectively seek declaratory relief.

## DISCUSSION

### A. *Jurisdiction*

■ In its answer, but not in its trial brief or during the trial, ECMC raised the issue of my authority to enter a final order or judgment, asserting that this action is a non-core proceeding.[3] ECMC failed to raise this argument during the trial and therefore, ECMC may be considered to have waived the argument or have impliedly consented to my entering a final order or judgment in this adversary proceeding. *See Abramowitz v. Palmer*, 999 F.2d 1274, 1280 (8th Cir.1993). Nonetheless, this is a core proceeding and there is no doubt that I have authority to enter a final order or judgment.

Pursuant to 28 U.S.C. § 157, bankruptcy judges may enter final orders and judgments in matters that are "core proceedings." *See* 28 U.S.C. § 157(b)(1)–(2), (c)(1). Proceedings concerning the allowance or disallowance of claims against the estate are unquestionably core proceedings. *See* 28 U.S.C. § 157(b)(2)(B); *S.G. Phillips Constructors, Inc. v. City of Burlington (In re S.G. Phillips Constructors, Inc.)*, 45 F.3d 702, 704–05 (2d Cir.1995);

*Pro Machine, Inc. v. Hardinge Bros., Inc. (In re Pro Machine, Inc.)*, 87 B.R. 998, 1003 (Bankr.D.Minn.1988). Resolution of this adversary proceeding involves interpreting and ascertaining the effect of my previous order determining the allowed amount of defendant's claim. The claim objection proceeding was a core proceeding. "Accordingly, this [adversary] action is a core proceeding under 28 U.S.C. § 157(b)(2)." *Bannister Bank & Trust v. City Management Co. (In re AmerEco Envtl. Servs., Inc.)*, 138 B.R. 590, 593 (Bankr.W.D.Mo.1992). Therefore, I have jurisdiction over this adversary proceeding and may enter a final order or judgment.

### B. *Claim Allowance Order*

■ McAlpin asserts that the claim allowance order, dated March 4, 1999, was a final determination of his liability on the student loan debt. Thus, McAlpin urges, ECMC is collaterally estopped from reasserting, or attempting to collect on, its claim for collection costs and fees which were not allowed. ECMC argues that the claim allowance order did not, and could not, *discharge* the collection debt, and thus, ECMC is not barred from collecting those costs. ECMC's argument misses the point. The issue is not whether the collection debt was discharged, the issue is whether ECMC has a claim for collection costs. When a bankruptcy court determines that the debt is not owed, then there is no debt to collect.

ECMC's argument is that: (a) collection costs are part of the underlying student loan debt, which debt may only be discharged through an adversary proceeding under Bankruptcy Code § 523(a)(8); (b) the allowance or disallowance of a claim does not, and cannot, discharge such claim under § 523; (c) thus, because the claim allowance order did not discharge the col-

---

**3.** 28 U.S.C. § 157(c)(1) provides that a bankruptcy judge may hear a non-core proceeding related to a bankruptcy case, but the bankruptcy judge must submit proposed findings of fact and conclusions of law to the district court. The district court must then enter any final order or judgment. *See* 28 U.S.C. § 157(c)(1). ECMC did concede that this court has jurisdiction under 28 U.S.C. § 1334.

lection costs, the order does not bar ECMC from collecting those costs. ECMC cites a plethora of cases which stand for the proposition that post-petition student loan or tax interest or debt survives bankruptcy and is not discharged; therefore, such debt is collectible. *See, e.g., Bruning v. United States,* 376 U.S. 358, 84 S.Ct. 906, 11 L.Ed.2d 772 (1964); *Hanna v. United States (In re Hanna),* 872 F.2d 829 (8th Cir.1989); *In re Girard,* 243 B.R. 894 (Bankr.M.D.Ala.1999).

However, McAlpin does not dispute that a student loan debt, including any proper interest charges or collection costs arising therefrom, is generally nondischargeable under Bankruptcy Code §§ 523(a)(8) and 1328(a)(2). There is no dispute that the claim allowance order did not discharge any proper student loan collection costs. Instead, my order determined that such collection costs did not exist.

■ Despite ECMC's unsupported contention to the contrary, it has long been well settled that a bankruptcy court may determine the amount of liability owed on a debt through the claim allowance, or disallowance, process, and that this determination has a preclusive effect in future proceedings if the claim determination was based upon the merits of the claim. *See Katchen v. Landy,* 382 U.S. 323, 329, 86 S.Ct. 467, 15 L.Ed.2d 391 (1966) (stating that the "power to allow or to disallow claims includes 'full power to inquire into the validity of any alleged debt or obligation of the [debtor] upon which a demand or a claim against the estate is based'" (quoting *Lesser v. Gray,* 236 U.S. 70, 74, 35 S.Ct. 227, 59 L.Ed. 471 (1915))); *Hanna,* 872 F.2d at 830–31; *Cohen v. Gross,* 316 F.2d 521, 523–24 (3d Cir.1963) (noting, in a tax debt collection action where the amount of the tax deficiencies had previously been allowed by a bankruptcy court, that "[i]f the claimed deficiencies had been disallowed by the bankruptcy court, that action would have been

a conclusive adjudication of the taxpayer's freedom from liability, binding on the government") (citations omitted); *United States v. Coast Wineries,* 131 F.2d 643, 648–49 (9th Cir.1942); *Hargadine–McKittrick Dry Goods Co. v. Hudson,* 122 F. 232, 233–34 (8th Cir.1903); *Snyder v. United States,* 213 B.R. 321 (E.D.Mich.1997); *Larcon Co. v. Wallingsford,* 136 F.Supp. 602, 612–15 (W.D.Ark.1955), *aff'd* 237 F.2d 904 (8th Cir.1956); *In re Smith,* 123 B.R. 863, 867 (Bankr.C.D.Cal.1991); *see also Bursch v. Beardsley & Piper,* 971 F.2d 108, 114 (8th Cir.1992) (holding that the debtor's insurance company could not be "derivatively liable for [a] debt because the debtor was never principally liable for it" where the debt had previously been disallowed in the debtor's bankruptcy case).

The Eighth Circuit case *Hanna,*[4] involved an appeal from a bankruptcy court's ruling that post-petition interest on unpaid tax debt was discharged in the debtors' Chapter 7 case. The basis of the bankruptcy court's ruling was apparently that a claim for unmatured interest is generally disallowed in bankruptcy. *See* 11 U.S.C. § 502(b)(2); *Hanna,* 872 F.2d at 830. Exploring whether Congress intended for this general rule to forever bar the collection of post-petition interest on a tax debt (a debt which, like student loan debt, is nondischargeable if not properly challenged under § 523), the appellate court reviewed the legislative history of § 523. The House Report accompanying § 523 of the 1978 Bankruptcy Reform Act stated: "If the taxing authority's claim has been disallowed, then it would be barred by the more modern rules of collateral estoppel from reasserting that claim [against the debtor] after the case was closed." H.R.Rep. No. 595, 95th Cong., 2d Sess. At 363–64 (1978), *reprinted in* 1978 U.S.Code Cong. and Admin.News 5963, 6319, *quoted in Hanna,* 872 F.2d at 831. However, noting the House Report's citation to an

---

4. 872 F.2d 829.

article[5] discussing the Bankruptcy Reform Act, the appellate court found that "the language in the [House] Report was not intended to cover all disallowed claims," but it was intended to cover claims disallowed on grounds based on the merits. *Hanna*, 872 F.2d at 831 (citing Plumb, *supra* note 5, at 1388). The article cited by the House Report states:

> Of course, if the debtor ... make[s] himself personally a party to an objection to allowance of a claim, he would be bound, under general principals of collateral estoppel or issue preclusion, by the bankruptcy court's determination of the ultimate facts actually placed in issue, including the validity of his obligation....
>
> ....
>
> *[U]nless the disallowance of a claim is based upon* nonprovability of the debt, or other *grounds not going to the merits, the creditor (including a tax creditor) cannot recover in a subsequent proceeding against the debtor personally if his claim was disallowed by the bankruptcy court;* and, if the claim was allowed only in part, the creditor can recover no more from the debtor personally than the uncollected balance of the amount so allowed.

Plumb, *supra* note 5, at 1386–88 (emphasis added) (citations omitted).

The *Hanna* court determined that unmatured interest is disallowed under the Bankruptcy Code for reasons concerning "administrative convenience and fairness." *Hanna*, 872 F.2d at 831. Thus, the unmatured tax interest was disallowed for reasons not based upon the merits of the claim, and the court held that the debtors remained personally liable for that debt following their bankruptcy. *See id.*

Other courts have universally agreed that, where a claim, including a claim arising from a generally non-dischargeable debt (such as certain tax or student loan debt), is allowed or disallowed for reasons based upon the merits, the bankruptcy court's claim allowance or disallowance order is "binding and conclusive on all parties or their privies" in any subsequent proceedings. *See Coast Wineries*, 131 F.2d at 648–49 (finding that the government was estopped from maintaining an action against the former debtor's surety where the bankruptcy court had entered an unappealed from order disallowing, on the merits, certain tax claims, the payment of which the surety had guaranteed); *Girard*, 243 B.R. 894; *Snyder*, 213 B.R. 321 *Smith*, 123 B.R. at 867.

*Girard*[6] is similar to this case. There, the debtors objected to claims filed by HEAF on the grounds that the student loan debts claimed were excessive. *Girard*, 243 B.R. at 896. The bankruptcy court agreed, concluding that the claims were filed in incorrect amounts, and thus sustained the objection and allowed the claims in reduced amounts. *Id.* Thereafter, the debtors were contacted on numerous occasions by ECMC attempting to collect the debtors "delinquent" student loan debt. *Id.* The court issued an order to show cause, and ECMC's response was to attempt "to re-litigate an objection to claim that was not responded to in the Chapter 13 case." *Id.* at 897. There, as here, "ECMC is ... disguising its argument on discharge grounds while in effect attempting to nullify the court's ruling on the objection to claim." *See id.* The *Girard* court applied collateral estoppel and held that ECMC was barred from relitigating the amount of its claim. *See id.* In so ruling, the bankruptcy court stated that its previous order:

> did determine ... the amount of the student loan obligation.... In effect debtors were, by their objection to claim, stating that the amount claimed owed by the creditor is disputed, incor-

---

**5.** William T. Plumb, *The Tax Recommendations of the Commission on Bankruptcy Laws: Tax Procedures*, 88 Harv.L.Rev. 1360 (1975).

**6.** 243 B.R. 894.

rect, or as here, excessive. *An objection to claim is the proper procedure to determine the amount of money owed.* Debtors were not seeking a discharge of the student loan obligation. What they were seeking was the amount of money owed to the creditor so that the debt could be paid.

*Id.* at 896 (emphasis added).

It is clear that in *Girard*, as here, the objection to the student loan claim concerned the *merits* of the amount claimed: in both cases, the debtors disputed the amount claimed owed, challenging that amount as being excessive, incorrect or improper. *See id.* McAlpin did not challenge the *nature* of the student loan collection costs, and he has never asserted that those costs are dischargeable. Instead, McAlpin objected to the collection costs and fees on the grounds that, under the applicable Code of Federal Regulations, the collection costs must be "reasonable" and limited to either the collection agency's "actual cost" incurred, or the "average cost" for similar loan collection proceedings.[7]

McAlpin's objection maintained that the amount claimed by defendant was neither the actual nor average cost incurred because, other than filing its claim, McAlpin was aware of no actual collection actions undertaken by ECMC or its predecessor, TGA. ECMC does not dispute that it received proper notice of the claim objection, but it chose not to respond. Based upon ECMC's failure to respond and my review of the claim and the objection, I reduced the amount of defendant's claim by the amount claimed for collection costs and fees. My order conclusively determined the amount of the student loan obligation, including collection costs and prepetition interest,[8] and ECMC may not now relitigate whether the disallowed collection costs and fees were the reasonable costs incurred by ECMC. ECMC could have raised this argument in response to the claim objection, but chose not to. Its argument now is simply that I was wrong in my determination and ECMC is free to ignore it. If I was wrong, ECMC's remedy was an appeal, not a collateral attack on the order in a different forum.

Lastly, ECMC relies heavily on a perceived distinction between its claim and McAlpin's debt, arguing that a determination of its claim is not a determination of McAlpin's debt. ECMC cites *Bell v. ECMC (In re Bell)*, 236 B.R. 426 (N.D.Ala. 1999), for the proposition that an order disallowing a claim for student loan debt does not discharge the student loan debt, and therefore, the claim order does not estop a student loan creditor from pursuing the debtor for the "deficiency" on the disallowed debt. In its opinion, the district court did not state the basis for the bankruptcy court's order sustaining the debtor's claim objection and reducing the

---

7. ECMC also argues that McAlpin's objection to defendant's claim did not fall under any of the grounds for objection enumerated under Bankruptcy Code § 502. ECMC is wrong. McAlpin's claim objection, asserting that the collection costs were not the actual or average costs incurred by defendant, as required by 34 C.F.R. § 674.45(e) et seq., was plainly made under 11 U.S.C. § 502(b)(1), which provides, in pertinent part:

[I]f such objection to claim is made, the court, after notice and a hearing, shall determine the amount of such claim as of the date of the filing of the petition, and shall allow such claim ... except to the extent that—

　(1) such claim is unenforceable against the debtor and property of the debtor, under any ... applicable law for a reason other than because such claim is contingent or unmatured.

11 U.S.C. § 502(b)(1).

8. Of course, my order did not determine the amount of post-petition interest which had accrued at that time, and may continue to accrue until the underlying principal amount of the student loan debt is paid. *See Bruning v. U.S.*, 376 U.S. 358, 84 S.Ct. 906, 11 L.Ed.2d 772; *Hanna*, 872 F.2d 829; *Girard*, 243 B.R. at 897 (all holding that the unpaid portion of student loan debt, including any post-petition interest, survives bankruptcy and the debtor's discharge and thus may be collected from the debtor personally outside of bankruptcy).

claim to $2000. However, as detailed above, if the claim reduction was based upon the merits of the claim (such as that the amount claimed was found to be excessive), then the *Bell* court was plainly confusing the issues of dischargeability and claim allowance or disallowance. As one bankruptcy commentator stated:

> The [*Bell*] court acted as if the 'objection to the claim' had been a request by the debtor to discharge all or part of the claim as an undue hardship under [Bankruptcy Code] § 523(a)(8). If that is what occurred, the opinion may have merit. But *if the objection was of a more pedestrian variety*—asserting perhaps that the debtor had made payments which were not credited when the creditor computed its claim—*then this case is plainly aberrant. There is no doubt that a disallowance of a claim (or a portion of a claim) on the merits is res judicata.*

5 William L. Norton, Jr., *Norton Bankruptcy Law & Practice* § 126.1 ("After Completion of Payments"), at n. 8.5 (2d ed.1997–2000) (emphasis added).

Perhaps the court's confusion arose from its premise that "claim allowance and debt liability are different concepts." *Bell,* 236 B.R. at 430. In support of this assertion, the court merely cited the Bankruptcy Code's definitions of "claim" and "debt." *See* 11 U.S.C. § 101(5), (12); *Bell,* 236 B.R. at 430. However, this premise is contrary to the cases discussed above, and to the interpretation of "debt" and "claim" by the United States Supreme Court. *See Pennsylvania Dept. of Pub. Welfare v. Davenport,* 495 U.S. 552, 558, 110 S.Ct. 2126, 109 L.Ed.2d 588 (1990) (noting the Bankruptcy Code's definition of "debt" to mean a "liability on a claim," the court found that "[t]his definition reveals Congress' intent that the meanings of 'debt' and 'claim' be coextensive"); *Mazzeo v. United States (In re Mazzeo),* 131 F.3d 295, 301–02 (2d

Cir.1997) (stating that the Supreme Court's "interpretation is confirmed by legislative history stating that '[the terms] are coextensive: a creditor has a "claim" against the debtor; the debtor owes a "debt" to the creditor' ") (citations omitted); *In re Brown,* 250 B.R. 382, 384 (Bankr.D.Idaho 2000) (maintaining that "as used throughout the Code," the "Supreme Court has instructed that the terms 'claim' and 'debt,' . . . should be considered coextensive"); *Ill. Dept. of Pub. Aid v. Wilder (In re Wilder),* 178 B.R. 174, 176 (Bankr.E.D.Mo.1995) (stating that the Supreme Court has interpreted the Bankruptcy Code's definition of claim, as a right to payment, "to mean 'nothing more nor less than an enforceable obligation' ") (quoting *Davenport,* 495 U.S. at 559, 110 S.Ct. 2126); *see also Katchen,* 382 U.S. at 329, 86 S.Ct. 467; *Hanna,* 872 F.2d at 830–31; *Girard,* 243 B.R. at 896 (all noting the bankruptcy court's authority to determine the validity or amount of a debt or obligation through the claim allowance/disallowance process).

Thus, this argument flies directly in the face of the Bankruptcy Code's reflexive definitions of "claim" and "debt" and the Supreme Court's opinion in *Davenport. See Davenport,* 495 U.S. at 559, 110 S.Ct. 2126.

### C. *Collateral Estoppel*

▮▮▮ The doctrine of "collateral estoppel, or issue preclusion, applies in bankruptcy cases to bar the relitigation of factual or legal issues" which were determined in a previous court action.[9] *See, e.g., Johnson v. Miera (In re Miera),* 926 F.2d 741, 743 (8th Cir.1991) (citing *Grogan v. Garner,* 498 U.S. 279, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991)). When determining whether a prior determination from a federal court, such as a bankruptcy court, should be given collateral estoppel effect, a four-part test is used:

---

**9.** McAlpin argues for the application of collateral estoppel. It may well be that we are really talking about principles of res judicata, or claim preclusion. The distinction is not important here.

(1) the issue sought to be precluded must be the same as that involved in the prior action;

(2) the issue must have been litigated in the prior action;

(3) the issue must have been determined by a valid and final judgment; and

(4) the determination must have been essential to the prior judgment.

*See Farmland Inds., Inc. v. Morrison–Quirk Grain Corp.,* 987 F.2d 1335, 1339 (8th Cir.1993), (citing *Miera,* 926 F.2d at 743).

■ All four elements are met here. First, the issue, the amount of McAlpin's student loan obligation owed to ECMC, is the same. Because ECMC has confused the issues of dischargeability and claim allowance/disallowance, ECMC erroneously argues that the issues are different. Section 502 contains a number of grounds for disallowing claims which are based on *bankruptcy* principles—e.g., unmatured interest, late filed claims, or a cap on damages for breach of lease. If a claim is disallowed, in whole or in part, on such grounds and the creditor's claim is not discharged, then the creditor would not be precluded from collecting the disallowed claim outside bankruptcy. The issues are not the same. However, if the claim is disallowed under § 502(b)(1), and therefore disallowed "on the merits," the creditor cannot attempt to relitigate the merits outside bankruptcy. The issue *is* the same.

McAlpin's objection only raised issues concerning the merits of the claim: McAlpin argued that the amount was excessive because the amount claimed for collection costs and fees was not the actual, or average, cost incurred by defendant. As a result, the claim allowance order acts as determination that McAlpin did not owe the collection costs and fees. *See, e.g., Simmons v. O'Brien,* 77 F.3d 1093, 1096–97 (8th Cir.1996) (applying collateral estoppel, in a federal civil rights action, to the issue of defendants' alleged use of force and duress to coerce plaintiff into confessing; although the state court trial judge had made no specific findings regarding the voluntariness of the confession, based upon the arguments made in a motion to suppress, the appellate court found that, by denying the motion and admitting the confession into evidence, the state court found the confession voluntary and not coerced); *see also Adair v. Sherman,* 230 F.3d 890, 895 (7th Cir.2000) (plaintiff brought an action alleging that defendants had violated the Fair Debt Collection Practices Act by overvaluing their secured claims in plaintiff's earlier Chapter 13 bankruptcy case; the court held that the existence and amount of the debt was conclusively determined by the bankruptcy court which had allowed defendants' proof of claim, unchallenged by the plaintiff, and confirmed plaintiff's Chapter 13 plan).

■ Second, the issue was actually litigated. McAlpin objected to the amount claimed, ECMC received proper notice and had an opportunity to respond but failed to do so. ECMC cannot deprive the order of its collateral estoppel effect by voluntarily not participating in the proceeding.

Third, the issue was determined by a valid and final judgment. ECMC did not appeal the claim allowance order, and the time to appeal has long since expired. *See* Fed.R.Bankr.P. 8002(a). Nor did ECMC ever seek a reconsideration of that order under Federal Rule of Bankruptcy Procedure 3008. *See Walsh Trucking Co. v. Ins. Co. of North America (In the Matter of Walsh Trucking Co.),* 838 F.2d 698, 701 (3d Cir.1988) (holding that an order expunging a creditor's claim from the bankruptcy proceeding was a final order subject to immediate appeal to the district court); *In re Dow Corning Corp.,* 237 B.R. 380, 388–89 (Bankr.E.D.Mich.1999) (and cases cited therein).

Fourth, determination of the issue was essential to the prior judgment. The very issue presented by the objection to claim is

the same one here: does McAlpin owe collection costs and fees?

 Collateral estoppel bars creditors from relitigating the issue of a debtor's liability on an obligation that was subject to a valid and final claim allowance or disallowance order or judgment. *See, e.g., Girard,* 243 B.R. 894.

### D. *Requests for Damages*

 McAlpin requested actual and compensatory damages in the form of sanctions. McAlpin requests such sanctions under my "civil contempt authority." While ECMC's collection actions are inconsistent with my prior order, it is not fair to say those actions "violated" the order in any sense which would subject it to contempt. There is no basis for awarding damages and I find that awarding damages to McAlpin in this action is not appropriate.

ECMC's answer included a counterclaim for "attorneys fees and costs pursuant to 11 U.S.C. § 105 and other applicable state law." Based upon the foregoing, sanctions are clearly inappropriate.

### CONCLUSION

The claim allowance order dated March 4, 1999, preclusively determined the amount of McAlpin's liability to ECMC as of the commencement of McAlpin's bankruptcy case. ECMC is estopped from attempting to relitigate the amount of pre-petition collection costs and fees arising from McAlpin's student loan debt.

### ORDER

THEREFORE, IT IS ORDERED:

1. *Declaratory Relief:* The claim allowance order, dated March 4, 1999, conclusively determined the amount of McAlpin's student loan obligation owed to ECMC as of November 17, 1993. The $5,023.98 portion of ECMC's claim, for collection costs and fees, is not a debt or obligation which McAlpin owes ECMC, nor is it a debt or obligation which ECMC may collect from McAlpin.

2. *Injunctive Relief:* ECMC, and each of ECMC's employees, representatives, agents, successors or assigns, is permanently enjoined from: taking any action to collect, or in any manner attempting to collect, or harassing McAlpin regarding, any portion of McAlpin's student loan debt which was not allowed by my claim allowance order of March 4, 1999, and specifically including the disallowed collection costs and fees in the amount of $5,023.98.

3. *Damages:* Except as provided in paragraphs 1 and 2 above, McAlpin's complaint is denied.

4. *Counterclaim:* ECMC shall recover nothing on its counterclaim.