# United States Court of Appeals

### For the Eighth Circuit

_____

No. 18-3489

_____

In re: Barbara A. Wigley

*Debtor*

------------------------------

Lariat Companies, Inc.

*Appellant*

v.

Barbara A. Wigley

*Appellee*

_____

In re: Barbara A. Wigley

*Debtor*

------------------------------

Barbara A. Wigley

*Appellee*

v.

Lariat Companies, Inc.

*Appellant*

_____

Appeal from the United States Bankruptcy
Appellate Panel for the Eighth Circuit

_____

Submitted: November 13, 2019
Filed: March 9, 2020

_____

Before COLLOTON, WOLLMAN, and BENTON, Circuit Judges.

_____

BENTON, Circuit Judge.

Lariat Companies, Inc. has a fraudulent-transfer judgment against Barbara A. Wigley, the debtor, for transfers she received from her husband, Michael R. Wigley. Lariat seeks an allowed bankruptcy claim for its judgment. The bankruptcy court allowed the claim. The Bankruptcy Appellate Panel concluded that Lariat's claim against Mrs. Wigley no longer exists because Mr. Wigley discharged his liabilities in an earlier bankruptcy. Having jurisdiction under 28 U.S.C. § 158(d)(1), this court reverses the BAP and affirms the bankruptcy court.

This case began in 2011. Lariat received a lease-guaranty judgment against Mr. Wigley. In 2013, a Minnesota court held Mrs. Wigley jointly-and-severally liable for a fraudulent transfer under the Minnesota Uniform Fraudulent Transfer Act (MUFTA)—resulting in the fraudulent-transfer judgment.

The next year, Mr. Wigley filed for bankruptcy. Lariat filed a claim, which was subject to the cap for lessors' claims in 11 U.S.C. § 502(b)(6). ***In re Wigley***, 533 B.R.

267, 271-72 (B.A.P. 8th Cir. 2015). In 2016, Mr. Wigley paid the capped amount and received a discharge in bankruptcy.

Because of Mr. Wigley's discharge, the Wigleys sought to vacate the fraudulent-transfer judgment. The Minnesota court ruled that Mr. Wigley's discharge did not retroactively extinguish the fraudulent-transfer judgment.

Mrs. Wigley then filed for bankruptcy. Lariat filed a claim based on the fraudulent-transfer judgment. The bankruptcy court allowed Lariat's claim. It ruled that Mr. Wigley's discharge did not extinguish Mrs. Wigley's liability, but capped it under 11 U.S.C. § 502(b)(6). The parties stipulated that the capped claim is $308,805.

The BAP reversed. It concluded that "[Mr. Wigley] has paid Lariat [his capped amount.] Lariat's predicate claim has thus been satisfied: Lariat cannot recover any additional amount from [Mr. Wigley.] That being so, there are no preexisting creditor rights left for [MUFTA] to protect in this case. Consequently, Lariat no longer has a claim against [Mrs. Wigley]." *In re Wigley*, 593 B.R. 327, 330 (B.A.P. 8th Cir. 2018).

Five days later, Mrs. Wigley moved to stay her appeal of the Minnesota court's decision that left in effect the fraudulent-transfer judgment. Lariat opposed the motion. The Minnesota Court of Appeals granted the stay on November 27, 2018, which remains in place.

"In an appeal from the BAP, this court independently reviews the bankruptcy court's decision, applying the same standard of review as the BAP." *In re Danduran*, 657 F.3d 749, 752 (8th Cir. 2011), *citing In re Ungar*, 633 F.3d 675, 678-79 (8th Cir. 2011). This court reviews for clear error the bankruptcy court's findings of fact, and de novo its legal conclusions. *In re Ungar*, 633 F.3d at 679.

I.

Lariat has a claim against Mrs. Wigley. In bankruptcy, "discharge of a debt of the debtor does not affect the liability of any other entity on, or the property of any other entity for, such debt." **11 U.S.C. § 524(e)**. *See also* **11 U.S.C. § 524(a)(1)** (discharge limited to "the personal liability of the debtor"). Mr. Wigley's discharge extinguished his liability, not Mrs. Wigley's. *Cf.* ***In re Modern Textile, Inc.***, 900 F.2d 1184, 1191 (8th Cir. 1990) (ruling that a bankruptcy trustee's rejection of an unexpired lease did not prevent lessor's claim against non-debtor guarantor).

Mrs. Wigley insists that Lariat's acceptance of Mr. Wigley's bankruptcy plan fully paid its capped claim, extinguishing any liability against her under MUFTA. Two facts defeat this argument. First, the parties stipulated that Mr. Wigley's payment did not cover all money owed Lariat. Second, the Minnesota court ruled that the fraudulent-transfer judgment exists, even after Mr. Wigley's discharge. "Property interests are created and defined by state law." ***Butner v. United States***, 440 U.S. 48, 55 (1979) (looking to state law to determine whether mortgagee had a claim to mortgagor/debtor's collected rents).

The BAP focused on an inapposite Eighth Circuit case applying MUFTA. *See* ***Deford v. Soo Line R. Co.***, 867 F.2d 1080 (8th Cir. 1989). *Deford* concluded that a Railway Labor Act case was properly removed because the Act preempted all state law claims, including an allegation the defendant violated MUFTA. *See* ***id.*** at 1087. Appellants, opposing removal, argued that MUFTA imposed duties and obligations independent of the collective bargaining agreement. *See* ***id.*** This court rejected that argument, writing "[MUFTA] is not substantive in nature, but instead merely confers an alternate remedy for protecting preexisting creditor rights. The creditor rights a party seeks to enforce must exist under independent law, such as contract law. The purpose of the statute is to grant creditors additional enforcement possibilities when a debtor transfers his assets to a third party." ***Id.*** (citation omitted).

-4-

From this language, the BAP concluded that Lariat's claim against Mrs. Wigley no longer existed because it was predicated on Mr. Wigley's (discharged) lease-guaranty judgment. *Deford*'s RLA-preemption ruling does not justify this conclusion. Expanding *Deford* conflicts with bankruptcy law's longstanding principle that "discharge destroys the remedy, but not the indebtedness." **Zavelo v. Reeves**, 227 U.S. 625, 629 (1913); **11 U.S.C. § 524(e)**.

Mrs. Wigley tries to draw support from another case of this court by distinguishing it. *See **In re Modern Textile, Inc.***, 900 F.2d at 1191. That case recognized that a trustee's rejection of a lease did not discharge the liability of a guarantor. *See **id.*** Mr. Wigley, unlike the trustee there, discharged the capped liability on the lease. This factual difference, however, does not alter the two key points here. First, Lariat has a fraudulent-transfer judgment against Mrs. Wigley. *See* **Kathy B. Enterprises, Inc. v. United States**, 779 F.2d 1413, 1414-15 (9th Cir. 1986) (ruling that fraudulent transferor's discharge in bankruptcy did not end liability for fraudulent transferee). Second, the text of the bankruptcy code states that "discharge of a debt of the debtor does not affect the liability of any other entity on, or the property of any other entity for, such debt." **11 U.S.C. § 524(e)**. *See also* **11 U.S.C. § 524(a)(1)** (discharge limited to "the personal liability of the debtor").

Tangentially, Lariat raises the *Rooker-Feldman* and collateral estoppel doctrines as "independent" grounds to reverse the BAP's decision. *See **In re Athens/Alpha Gas Corp.***, 715 F.3d 230, 235 (8th Cir. 2013) ("*Rooker-Feldman* is a rule of statutory jurisdiction") (emphasis omitted). Lariat invokes the Minnesota court's ruling that Mr. Wigley's discharge did not retroactively extinguish the fraudulent-transfer judgment. Because this opinion does not review, let alone reject, the Minnesota court's decision, *Rooker-Feldman* does not apply. *See **Exxon Mobil Corp. v. Saudi Basic Indus. Corp.***, 544 U.S. 280, 291 (2005) (*Rooker-Feldman* applies when "the losing party in state court filed suit in federal court after the state proceedings ended, complaining of an injury caused by the state-court judgment and

-5-

seeking review and rejection of that judgment"). Similarly, because this opinion does not address the same issue as the state court judgment, collateral estoppel does not apply. *See* **Hauschildt v. Beckingham**, 686 N.W.2d 829, 837 (Minn. 2004) (collateral estoppel applies for "identical" issues).

Mr. Wigley's discharge does not extinguish Mrs. Wigley's liability.

II.

Lariat's claim against Mrs. Wigley is capped under 11 U.S.C. § 502(b)(6):

> (a) A claim or interest . . . is deemed allowed . . . . (b) the court . . . shall allow such claim in such amount, except to the extent that—(6) if such claim is the claim of a lessor for damages resulting from the termination of a lease of real property, such claim exceeds—(A) the rent reserved by such lease, without acceleration, for the greater of one year, or 15 percent, not to exceed three years, of the remaining term of such lease, following the earlier of—(i) the date of the filing of the petition; and (ii) the date on which such lessor repossessed, or the lessee surrendered, the leased property; plus (B) any unpaid rent due under such lease, without acceleration, on the earlier of such dates.

**11 U.S.C. § 502(b)(6)**. After the termination of the lease, Mr. Wigley was liable to Lariat for the lease-guaranty judgment. Two years later, Mrs. Wigley was liable for the fraudulent-transfer judgment that found Mr. Wigley made the transfers to her "with actual intent to hinder, delay, or defraud Lariat['s]" recovery on the lease-guaranty judgment.

Lariat argues that its claim did not "result[] from the termination of a lease," but from the fraudulent transfer. The parties do not cite case law applying the cap to

-6-

a fraudulent transferee. But courts have capped liability for guarantors and garnishees. *See In re Wigley*, 533 B.R. 267, 271-72 (B.A.P. 8th Cir. 2015) (applying cap to Mr. Wigley, as lease guarantor); *In re Farley, Inc.*, 146 B.R. 739, 745 (Bankr. N.D. Ill. 1992) ("For purposes of applying § 502(b)(6) to a landlord's claim, it is not legally relevant whether the debtor is defined as 'tenant' or as 'guarantor' of the lease."); *In re Blatstein*, 1997 WL 560119, at *16 (E.D. Pa. Aug. 26, 1997) ("While the judgment obtained against [debtor] arose out of garnishment proceedings, the basis for the claim relates back to the Lease."). Guarantors and garnishees are analogous to fraudulent transferees because their liability is one step removed from the breach of the lease. Lariat quibbles, noting that garnishees, unlike fraudulent transferees, may raise certain defenses on the debtor's behalf. *See id.* at *6. This quibble is irrelevant to interpreting the "resulting from" language in § 502(b)(6) for fraudulent transferees.

Applying the cap to Lariat's claim complies with the statute's text, which focuses on the "claim of a lessor"—not claim against a lessee. **11 U.S.C. § 502(b)(6)**. *See In re Arden*, 176 F.3d 1226, 1229 (9th Cir. 1999) (applying cap to guarantor because "plain reading of the section underscores that it is the claim of the lessor, not the status of the lessee—or its agent or guarantor—that triggers application of the Cap"). This prevents lessors from receiving windfalls on long-term leases that would hurt other unsecured creditors. *See* **4 Collier on Bankruptcy ¶ 502.03(7)(a)**; *Oldden v. Tonto Realty Corp.*, 143 F.2d 916, 921 (2d Cir. 1944), *cited in* **S. Rep. No. 95-989**, at 63 (1978) (stating § 502(b)(6) is "designed to compensate the landlord for his loss while not permitting a claim so large (based on a long-term lease) as to prevent other general unsecured creditors from recovering a dividend from the estate"). Lariat, as lessor, should not avoid the cap—and receive a windfall—because it is filing a claim based on a fraudulent-transfer judgment from a breach of the lease, instead of a claim based just on breach.

Lariat believes the § 502(b)(6) cap requires proximate causation, and that Mrs. Wigley's liability is not proximately caused by the termination of the lease. It relies on non-bankruptcy cases about insurance contracting and ERISA. *See **Pan Am. World Airways, Inc. v. Aetna Cas. & Sur. Co.***, 505 F.2d 989, 1006 (2d Cir. 1974); ***Willett v. Blue Cross & Blue Shield of Alabama***, 953 F.2d 1335, 1343 (11th Cir. 1992). The fraudulent-transfer judgment against Mrs. Wigley is one step from the breach of the lease, but her liability results from the breach of the lease, so the cap applies.

Lariat's claim against Mrs. Wigley "result[ed] from the termination of a lease," so the § 502(b)(6) cap applies.

III.

This court reverses the judgment of the BAP. Mr. Wigley's discharge did not extinguish Mrs. Wigley's liability, but 11 U.S.C. § 502(b)(6) caps it.

This court remands to the bankruptcy court to enter an order that Lariat has a claim against Mrs. Wigley for $308,805 (plus applicable interest), and other proceedings consistent with this opinion.

\* \* \* \* \* \* \*

The judgment is reversed.

_____