# United States Court of Appeals
## For the Eighth Circuit

_____

No. 20-3132
_____

In re: Barbara A. Wigley

*Debtor*

------------------------------

Lariat Companies, Inc.

*Appellee*

v.

Barbara A. Wigley

*Appellant*
_____

Appeal from the United States Bankruptcy
Appellate Panel for the Eighth Circuit
_____

Submitted: May 12, 2021
Filed: October 18, 2021
_____

Before COLLOTON, WOLLMAN, and KOBES, Circuit Judges.
_____

WOLLMAN, Circuit Judge.

Debtor Barbara A. Wigley (Barbara) appeals from the judgment of the bankruptcy appellate panel, which affirmed the bankruptcy court's determination that her debt to Lariat Companies, Inc. (Lariat), is excepted from discharge because it was obtained by actual fraud. Barbara argues that the bankruptcy court committed legal and factual errors in reaching that conclusion. We affirm.

## I. Background

Baja Sol Cantina EP, LLC, entered into a lease agreement with Lariat in late 2008, with Michael Wigley (Michael), Barbara's husband, personally guaranteeing the company's obligations under the lease. Baja Sol was evicted for failure to pay rent in mid-2010. Lariat thereafter filed suit against Baja Sol and Michael in Minnesota state court, seeking to recover past-due and future-accruing rent. While the lease action was pending, Michael transferred some of his assets—namely, his interest in the Wigleys' joint checking account and his limited partnership interests in Spell Capital Funds II and III—to Barbara. The state court entered summary judgment in favor of Lariat in June 2011, awarding more than $2 million in damages.[1]

Lariat and other creditors thereafter sued Barbara in state court for fraudulent transfer of funds under the Minnesota Uniform Fraudulent Transfer Act, Minn. Stat. § 513.41 *et seq*. Michael eventually was joined in the action. In its October 2013 order, the state court found that Michael had transferred assets to Barbara "with actual intent to hinder, delay, or defraud Lariat; without receipt of reasonably equivalent

[1]Lariat had leased the Baja Sol space to another company in July 2011. Michael did not timely present evidence of a mitigation defense, however, and the state court thus denied his motion to vacate the summary judgment order. The state court found that Michael had made a strategic litigation decision to forego engaging in discovery. Michael did not appeal from the denial of the motion to vacate. See Lariat Cos., Inc. v. Baja Sol Cantina EP, LLC, No. A12-2202, 2013 WL 4404589, at *6 n.3 (Minn. Ct. App. Aug. 19, 2013) (unpublished).

value in exchange for the transfers; and at a time when M. Wigley was insolvent or became insolvent as a result of the transfers." The state court entered judgment in favor of Lariat, holding Barbara and Michael jointly and severally liable for more than $780,000.

Michael filed for Chapter 11 bankruptcy in February 2014. The bankruptcy court applied the landlord cap, see 11 U.S.C. § 502(b)(6), to Lariat's claim, to the extent the claim involved the Baja Sol lease termination.[2] After Michael satisfied the capped claim of $637,581.07, Barbara moved to vacate the fraudulent transfer judgment. The state court denied the motion in December 2016. Days later, Barbara filed for Chapter 11 bankruptcy.

Lariat filed a claim in Barbara's bankruptcy case for more than $1 million, which represented the fraudulent transfer judgment and the interest that had accrued. Over Barbara's objection, the bankruptcy court determined that Lariat's discharged claim in Michael's bankruptcy case did not extinguish Barbara's liability to Lariat. The bankruptcy court concluded that Lariat's claim in Barbara's proceeding arose from a lease termination, however, and thus applied § 502(b)(6)'s landlord cap. See In re Barbara Wigley, 951 F.3d 967, 972 (8th Cir. 2020) (affirming the bankruptcy court's judgment and remanding the matter "to the bankruptcy court to enter an order that Lariat has a claim against Mrs. Wigley"). Barbara thereafter satisfied Lariat's capped claim of $330,886.67.

While Barbara's objection to Lariat's claim was pending, Lariat filed a complaint in bankruptcy court seeking to except its claim from discharge. Lariat

---

[2]The bankruptcy court disallowed Lariat's claim against Michael's estate to the extent it sought relief related to the fraudulent transfer judgment, concluding that the fraudulent transfer judgment was duplicative of the judgment awarding damages for breach of lease. See In re Michael Wigley, 533 B.R. 267, 272 (B.A.P. 8th Cir. 2015) (affirming, in relevant part, the bankruptcy court's judgment).

argued that Barbara should be required to pay the entire debt (*i.e.*, the fraudulent transfer judgment plus interest) and that the debt should remain with Barbara post-bankruptcy, because it was obtained by "actual fraud." See 11 U.S.C. § 523(a)(2)(A). Following a two-day trial, the bankruptcy court entered judgment in favor of Lariat. It found that Michael had transferred assets to hinder, delay, or defraud his creditors; that Barbara had participated in the scheme; and that she had "possessed actual fraudulent intent when receiving the transfers." The bankruptcy appellate panel affirmed. In re Barbara Wigley, 620 B.R. 87 (B.A.P. 8th Cir. 2020).

## II. Discussion

On appeal from a decision of the bankruptcy appellate panel, we act as a second reviewing court of the bankruptcy court's decision. In re Barbara Wigley, 951 F.3d at 970. We thus review the bankruptcy court's factual findings for clear error and its legal conclusions *de novo*. Id.

Section 523(a)(2)(A) excepts from discharge any debt "for money . . . to the extent obtained by . . . actual fraud." The term "actual fraud" includes fraudulent conveyances. See Husky Int'l Elecs., Inc. v. Ritz, 136 S. Ct. 1581, 1586 (2016) (hereinafter Husky); DZ Bank AG Deutsche Zentral Genossenschaft Bank v. Meyer, 869 F.3d 839, 843–44 (9th Cir. 2017). "[W]hen a debtor transfers property to a third party without adequate consideration, the transfer is deemed a fraud on the debtor's creditors." McClellan v. Cantrell, 217 F.3d 890, 894 (7th Cir. 2000); see Husky, 136 S. Ct. at 1587 (explaining that "fraud" has long been used "to describe a debtor's transfer of assets that . . . impairs a creditor's ability to collect the debt"). That fraud "is actual if the debtor intended by the transfer to hinder his creditors." McClellan, 217 F.3d at 894; see Husky, 136 S. Ct. at 1586 ("[A]nything that counts as 'fraud' and is done with wrongful intent is 'actual fraud.'").

Barbara first argues that the bankruptcy court erred in excepting Lariat's claim from discharge because doing so nullified the landlord-cap relief she had been granted under 11 U.S.C. § 502(b)(6). Barbara maintains that § 502(b)(6) protects unsecured creditors by "prevent[ing] lessors from receiving windfalls on long-term leases." See In re Barbara Wigley, 951 F.3d at 972 (citing S. Rep. No. 95-989, at 63 (1978), which cites Oldden v. Tonto Realty Corp., 143 F.2d 916, 921 (2d Cir. 1944), and states that § 502(b)(6) was "designed to compensate the landlord for his loss while not permitting a claim so large (based on a long-term lease) as to prevent other general unsecured creditors from recovering a dividend from the estate"). Barbara contends that the bankruptcy court improperly excepted Lariat's claim under § 523(a)(2)(A) "to reach an outcome directly in conflict with the specific mandate of § 502(b)(6)," thereby rendering the landlord cap superfluous. Appellant's Br. 22.

Although Lariat's claim was partially disallowed against Barbara's bankruptcy estate under § 502(b)(6), the landlord cap does not foreclose Lariat's argument that the claim should be excepted from discharge under § 523(a)(2)(A).[3] As previously stated, Lariat filed a claim for the amount of the fraudulent transfer judgment plus interest. Barbara objected, and the bankruptcy court capped Lariat's claim under § 502(b)(6), which established the amount allowed to be paid from the bankruptcy estate. The application of § 502(b)(6) did not preclude Lariat from seeking to except its claim from discharge under § 523(a)(2)(A), however. See In re McAlpin, 254 B.R. 449, 454–56 (Bankr. D. Minn. 2000) (concluding that a creditor is not necessarily

---

[3]A claim is deemed allowed unless a party in interest objects. 11 U.S.C. § 502(a). As explained in In re Condor Systems, Inc., 296 B.R. 5, 12 (B.A.P. 9th Cir. 2003):

> The *claim* is for the total available under substantive nonbankruptcy law. In contrast, the *cap* merely defines how much of the substantive claim will be "allowed" to be paid by the bankruptcy estate and mandates "disallowance" of the excess. Taken together, the claim and cap yield the "allowed" or "allowable" claim.

barred from seeking to collect a disallowed claim, if the claim was disallowed based on bankruptcy principles (*e.g.*, § 502(b)(6)) and not on the merits). Accordingly, we conclude that Lariat's claim is excepted from discharge under § 523(a)(2)(A) to the extent that it was obtained by actual fraud. See Grogan v. Garner, 498 U.S. 279, 287 (1991) ("Congress evidently concluded that the creditors' interest in recovering full payment of debts in [this category] outweighed the debtors' interest in a complete fresh start.").

Barbara argues that the bankruptcy court erred in concluding that she committed "actual fraud." A transferee who receives a fraudulent transfer with the requisite wrongful intent commits "actual fraud," and any debts traceable to the fraudulent transfer are excepted from discharge. See Husky, 136 S. Ct. at 1586. The transferee's intent must "involv[e] moral turpitude or intentional wrong." Id. (quoting Neal v. Clark, 95 U.S. 704, 709 (1878)). The exception does not cover implied fraud, which "describe[s] acts of deception that 'may exist without the imputation of bad faith or immorality.'" Id. (quoting Neal, 95 U.S. at 709).

The bankruptcy court did not clearly err in finding that Barbara had received a fraudulent transfer from Michael.[4] Barbara testified that the Wigleys began experiencing financial difficulties in 2008. By the end of 2010, Lariat and other creditors had filed suit in state court against Michael. The Wigleys had moved from their family home in early 2011, executing short sales on their residence and an adjoining lot. In addition, Lariat had filed its motion for summary judgment in the

---

[4]We reject Barbara's argument that the bankruptcy court erred in considering the badges of fraud set forth in Minn. Stat. § 513.44(b). See Ritchie Cap. Mgmt., LLC v. Stoebner, 779 F.3d 857, 863 (8th Cir. 2015) (affirming the bankruptcy court's finding of actual fraudulent intent under the badges of fraud approach); see also In re Addison, 540 F.3d 805, 813–14 (8th Cir. 2008) (concluding that "the bankruptcy court properly looked to the badges of fraud enumerated in Minn. Stat. Ann. § 513.44(b)" but clearly erred in finding that the debtor had fraudulent intent).

lease action, which sought more than $2 million in damages. Accordingly, the Wigleys were in financial distress when Michael transferred his interest in the joint checking account and his interests in the Spell Capital Funds to Barbara in March 2011. The bankruptcy court found their stated reason for the transfer—estate planning—not credible in light of the evidence that the Wigleys had not followed their usual practice of consulting with estate planning professionals, nor were the transfers made in accordance with their ten-year estate planning cycle. Moreover, Barbara later used the funds to pay Michael's creditors, which negated any estate planning benefit. According to the bankruptcy court's findings, when asked whether he had transferred his interests in the Spell Capital Funds in an attempt to avoid collection activities, Michael "emotionally responded, 'I was trying to protect myself, my businesses[,] and my family. Absolutely, I was trying to protect myself, my businesses, and my family.'"

The record also supports the bankruptcy court's finding that Barbara participated in the scheme with the requisite wrongful intent. The Wigleys testified that they regularly discussed their financial situation and reviewed their accounts together. Barbara testified that she knew that Michael had been sued, and the bankruptcy court fairly inferred that it was "unrealistic that a possible judgment of [more than $2 million] was not discussed, especially given the impact it would have had on the family's financial condition." The bankruptcy court also relied on a letter that the Wigleys had submitted to the Internal Revenue Services in 2012, explaining that they were scrambling to cover business expenses and fighting to save their home. The bankruptcy court did not clearly err in rejecting the assertion that Barbara did not understand why the funds were being transferred to her and in finding instead that she decided to protect her husband by receiving the transfers, thereby "help[ing] M. Wigley evade his creditors." The evidence thus supports a finding that Barbara engaged in a "fraud that 'involv[ed] . . . intentional wrong.'" See Husky, 136 S. Ct. at 1586 (quoting Neal, 95 U.S. at 709).

We recognize that the facts of the Wigleys' fraudulent transfer scheme are not as egregious as the facts presented in other cases. See id. at 1585 (debtor transferred large sums of money to other entities he controlled); McClellan, 217 F.3d at 892 (debtor purchased machinery from brother for $10, sold the machinery for $160,000, "and she's not telling anyone what has happened to that money"). The bankruptcy court properly applied the law to the facts of this case, however, and the record reflects that the court's findings were not clearly erroneous. Because the evidence supports the findings that Barbara intended to and did commit actual fraud, her fraudulent transfer judgment is nondischargeable under § 523(a)(2)(A). See Husky, 136 S. Ct. at 1589 ("If that recipient [of a fraudulent transfer] later files for bankruptcy, any debts traceable to the fraudulent conveyance will be nondischargeable under § 523(a)(2)(A)." (internal quotation marks and citation omitted)).

The bankruptcy court's judgment is affirmed.

_____