# FOR PUBLICATION

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

In re: AB LIQUIDATING CORP., fka
Adaptive Broadband Corporation,
                                    *Debtor,*

AMB PROPERTY, L.P.,
                                    *Appellant,*

            v.

OFFICIAL CREDITORS FOR THE
ESTATE OF AB LIQUIDATING CORP.,
fka Adaptive Broadband
Corporation,
                                    *Appellee.*

No. 03-16979

D.C. No.
CV-03-00021-RMW

OPINION

Appeal from the United States District Court
for the Northern District of California
Ronald M. Whyte, District Judge, Presiding

Argued and Submitted
June 13, 2005—San Francisco, California

Filed July 19, 2005

Before: Mary M. Schroeder, Chief Judge,
M. Margaret McKeown, Circuit Judge, and
Kevin Thomas Duffy,* District Judge.

Opinion by Judge Duffy

*The Honorable Kevin Thomas Duffy, United States District Judge for
the Southern District of New York, sitting by designation.

## COUNSEL

Michael St. James, St. James Law, San Francisco, California, for the appellant.

Robert A. Franklin, Murray & Murray, P.C., Cupertino, California, for the appellee.

## OPINION

DUFFY, District Judge:

   This case arises from the bankruptcy of Adaptive Broadband Corporation ("Debtor"). AMB Property, L.P. ("AMB"),

Debtor's pre-petition landlord, appeals from the district court's affirmance of the bankruptcy court's judgment. In that judgment, the bankruptcy court sustained the Creditors' Committee's objection to AMB's claim against Debtor's estate for breach-of-lease damages. For the reasons set forth below, we affirm the judgment of the district court.

## I. Background

This case was decided on stipulated facts in the bankruptcy court. On April 17, 2000 AMB and Debtor entered into a five-year lease (the "Lease") for certain commercial property. The Lease required a Security Deposit of $1,000,000. A contemporaneously dated Addendum allowed the Security Deposit to be in the form of a letter of credit. Debtor established a fully-collateralized $1,000,000 letter of credit, in favor of AMB, through Union Bank ("Letter of Credit" or "Letter").

Debtor filed for Chapter 11 bankruptcy July 26, 2001 and promptly rejected the Lease. AMB re-let the premises to another tenant and filed a $2,000,000 proof of claim for damages resulting from Debtor's rejection of the Lease. The Creditors' Committee filed an objection to AMB's claim, arguing that the Security Deposit should reduce the allowed claim by $1,000,000. The bankruptcy court agreed with the Creditors' Committee, and rejected AMB's counter-argument that the security deposit should be applied to reduce AMB's damages before calculating the amount of the allowed claim. AMB appealed the bankruptcy court's decision to the district court; the district court affirmed. This appeal followed.

## II. The Landlord's Cap Under The Bankruptcy Code

[1] This appeal turns entirely on a single provision of the Bankruptcy Code, 11 U.S.C. § 502(b)(6), and presents a question of statutory interpretation which we review *de novo*. *See In re Quintana*, 915 F.2d 513, 515 (9th Cir. 1990). Section 502 sets forth the mechanism for calculating the amount of

allowable claims against a bankruptcy estate. Subsection (b)(6) governs claims by landlords and provides that if objection to a claim is made:

> (b) the court, after notice and a hearing, shall determine the amount of such claim . . . and shall allow such claim in such amount, except to the extent that . . . (6) if such claim is the claim of a lessor for damages resulting from the termination of a lease of real property, such claim exceeds . . . the rent reserved by such lease, without acceleration, for the greater of one year, or 15 percent, not to exceed three years, of the remaining term of such lease . . .

11 U.S.C. § 502(b)(6). This provision is commonly referred to as the "Landlord's Cap" because it caps the amount a landlord may claim as damages because of a Debtor's rejection of a lease. In sum, the relevant part of Section 502(b)(6) provides that a landlord's claim is limited to the lesser of: (1) its actual damages; or (2) one year's lease payments.[1]

[2] AMB and the Creditors' Committee agree that AMB's gross damages were $5 million.[2] Because this amount exceeds one year's rent ($2 million), they agree that the Landlord's Cap applies. The only issue in this appeal is whether to apply the $1 million Security Deposit/Letter of Credit against the $5 million "gross damages" number or the $2 million "capped" number.

[3] The Creditors' Committee argues that the plain language of the statute, appellate decisions from other circuits,

---

[1] Section 502's alternative cap of 15% is not at issue in this appeal.

[2] The exact damages claimed were $5,602,034.07. Consistent with the parties' submissions and argument in this appeal, throughout this opinion the figure is rounded to $5 million. Likewise, one year's rent of $2,000,755.20, and the proceeds of the Letter of Credit of $999,970.00, are rounded to $2 million and $1 million respectively.

and legislative history support deducting the $1 million Security Deposit from the "capped" number. AMB counters that the plain language of the statute, various policy considerations, and the structure of the Bankruptcy Code as a whole require that the Security Deposit be applied to the $5 million "gross damages" number. The proper application of a security deposit in this context is an issue of first impression before this Court.

### III.    *Section 502(b)(6) and* Oldden v. Tonto Realty Co.

According to the Creditors' Committee's interpretation (which was employed by the bankruptcy court and affirmed by the district court), Section 502(b)(6) requires a court to: (1) determine the landlord's gross damages (net of any recovery through re-letting the property); (2) compare the gross damages to the statutory cap of one year's rent; (3) subtract any security deposit or letter of credit from the lesser of gross damages or one year's rent; and (4) allow a claim for this amount. Employing this approach, AMB's gross damages of $5 million exceed one year's rent of $2 million. Accordingly, the $1 million Security Deposit/Letter of Credit was subtracted from one year's rent, yielding AMB's allowable claim of $1 million.

**[4]** This analytical framework is largely based on *Oldden v. Tonto Realty Co.*, 143 F.2d 916 (2d Cir. 1944). *Oldden*, a case often cited by bankruptcy courts, involved a landlord who held a cash security deposit from a debtor, and addressed the question of "whether a landlord is required to deduct the amount of security held under a lease from the total damages provided by the lease or from the total claim allowable [under the Bankruptcy Code]." *Oldden*, 143 F.2d at 918. The *Oldden* court concluded that the security deposit should be deducted from the allowable claim rather than the total damages. *Id*. Congress endorsed this holding, as the House Judiciary Report to amended Section 502(b)(6) notes:

> This paragraph will not overrule *Oldden*, or the proposition for which it has been read to stand: to the extent that a landlord has a security deposit in excess of the amount allowed under this paragraph, the excess comes into the estate. . . . As under *Oldden*, [a landlord] will not be permitted to offset his actual damages against his security deposit and then claim for the balance under this paragraph. *Rather, his security deposit will be applied in satisfaction of the claim that is allowed under this paragraph.*

H.R. Rep. No. 95-595, at 353-54 (1977), reprinted in 1978 U.S.C.C.A.N. 5963, 6309 (emphasis added). Indeed, the purpose of the Landlord's Cap is "to compensate the landlord for his loss while not permitting a claim so large . . . as to prevent other general unsecured creditors from recovering a dividend from the estate." 1978 U.S.C.C.A.N. at 6309.

AMB argues that *Oldden* was wrongly decided and should be rejected by this Court. Mindful of the fact that the legislative history's endorsement of *Oldden* effectively eviscerates this argument, AMB urges us not to delve into congressional intent, arguing that the text of Section 502 is unambiguous and therefore precludes inquiry into legislative history.

According to AMB, the plain language of Section 502 requires a court to: (1) determine the landlord's gross damages (net of any recovery through re-letting the property); (2) subtract from those gross damages any "mitigation" from security deposits or letters of credit; (3) compare this "mitigated damages" amount to the statutory cap of one year's rent; and (4) allow a claim for the lesser of either the "mitigated damages" or one year's rent. Employing this approach, AMB's gross damages of $5 million, minus the $1 million Security Deposit/Letter of Credit yield "mitigated damages" of $4 million. These "mitigated damages" exceed one year's

rent of $2 million. Accordingly, AMB argues the bankruptcy court should have allowed its entire $2 million claim.

AMB's plain language argument is misplaced. On its face, Section 502(b)(6) makes no mention of how security deposits should be applied in the calculation of allowable claims. Thus, the statute is ambiguous as to whether such deposits should be applied to a landlord's gross damages or its capped claim. Given this ambiguity, Congress's explicit endorsement of *Oldden* prevents us from accepting AMB's invitation to reject the case outright.

AMB alternatively argues that even if we accept *Oldden* in the context of cash security deposits, we should not extend *Oldden*'s rule to encompass letters of credit. AMB argues that such an extension will unnecessarily interfere with third-party relationships, unduly penalize landlords while failing to advance the policy of the Bankruptcy Code, and generally wreak havoc on commercial leasing.

**[5]** Rather than simply applying *Oldden* to all letters of credit that are provided as security deposits, AMB urges us to adopt reasoning set forth by Judge Klein of the Bankruptcy Appeals Panel. AMB contends that Judge Klein's majority opinion in *In re Condor Systems, Inc.*, 296 B.R. 5 (9th Cir. BAP (Cal.) 2003), and his concurrence in *In re Mayan Networks*, 306 B.R. 295, 301 (9th Cir. BAP (Cal.) 2004), present the appropriate framework for analyzing the interplay between letters of credit and statutory caps under the Bankruptcy Code. However, despite AMB's argument, the resolution of this appeal does not require that we decide whether Judge Klein has set forth the appropriate procedure for applying letter of credit security deposits to landlords' claims. Regardless of whether we apply *Oldden*, or adopt Judge Klein's reasoning, the result is the same; the judgment below

stands. Under either rationale, the proceeds of the letter of credit were properly subtracted from AMB's allowed claim.[3]

AFFIRMED.

---

[3]In *Mayan Networks*, Judge Klein concurred in holding that the proceeds of a letter of credit that was fully-collateralized by the debtor's property should be deducted from the landlord's capped claim. The letter of credit in this case was likewise fully-collateralized by Debtor's property. Thus, even under Judge Klein's reasoning, the proceeds were appropriately deducted from AMB's capped claim.