**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

| | |
|---|---|
| IN RE KONSTANTIN KUPFER; MARGARITA KUPFER, *Debtors.* | No. 14-16697 D.C. No. 3:14-cv-00668-WHO |
| KONSTANTIN KUPFER; MARGARITA KUPFER, *Debtors-Appellants*, v. KARIM SALMA; ROBERT SALMA, as Trustees of the Salma Family Trust; LINDSEY S. BRUEL; RIYAD R. SALMA; LAITH K. SALMA, *Creditors-Appellees.* | ORDER AND OPINION |

Appeal from the United States District Court
for the Northern District of California
William Horsley Orrick III, District Judge, Presiding

Argued and Submitted October 17, 2016
San Francisco, California

Filed December 29, 2016

Before: Susan P. Graber and Mary H. Murguia, Circuit Judges, and Mark W. Bennett,[*] District Judge.

Order;
Opinion by Judge Graber

## SUMMARY[**]

### Bankruptcy

The panel filed (1) an order redesignating a memorandum disposition as an opinion, with modifications, and (2) an opinion vacating the district court's affirmance of the bankruptcy court's order allowing a claim.

Creditors filed a proof of claim for a pre-petition arbitration award (1) assessing damages against bankruptcy debtors for breaches of leases and (2) awarding attorney fees and arbitration fees.

The panel held that the statutory cap on a landlord's claims against a tenant in bankruptcy, set forth in 11 U.S.C. § 502(b)(6), applies only to claims that result directly from the termination of a lease, but not to collateral claims. The panel held that fees attributable to litigating the creditors' claims for future rent were capped, because such claims

[*] The Honorable Mark W. Bennett, United States District Judge for the Northern District of Iowa, sitting by designation.

[**] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

would not arise were the leases not terminated. But fees attributable to litigating claims for past rent were not capped. To the extent that the debtors' counterclaims in the breach-of-lease litigation concerned ordinary alleged breaches, independent of a lease termination, the associated fees and costs were not capped, either.

The panel vacated the district court's judgment and remanded for further proceedings.

**COUNSEL**

Reno F.R. Fernandez III (argued), Iain A. Macdonald, and Matthew J. Olson, Macdonald Fernandez LLP, San Francisco, California, for Debtors-Appellants.

Merle C. Meyers (argued) and Michele Thompson, Meyers Law Group P.C., San Francisco, California, for Creditors-Appellees.

## ORDER

The request to publish the unpublished Memorandum disposition is **GRANTED**. The Memorandum disposition filed October 27, 2016, is redesignated as an authored Opinion by Judge Graber with modifications.

## OPINION

GRABER, Circuit Judge:

"This appeal turns entirely on a single provision of the Bankruptcy Code, 11 U.S.C. § 502(b)(6), and presents a question of statutory interpretation which we review *de novo*." *AMB Prop., L.P. v. Official Creditors for Estate of AB Liquidating Corp. (In re AB Liquidating Corp.)*, 416 F.3d 961, 963 (9th Cir. 2005). We hold that the statutory cap on a landlord's claims against a tenant in bankruptcy, set forth in § 502(b)(6), applies only to claims that result directly from the termination of a lease, but not to collateral claims. Because the district court used an all-or-nothing approach, we vacate and remand for further proceedings.

Konstantin Kupfer and Margarita Kupfer ("Debtors") leased from Karim Salma and Roberta Salma as Trustees of the Salma Family Trust, Lindsey S. Bruel, Riyad R. Salma, and Laith K. Salma ("Creditors") two commercial properties located in Burlingame, California. Each lease ran for 10 years. Each lease included an arbitration clause for the "Resolution of Disputes Between Landlord and Tenant" and included a clause under which attorney fees, arbitration fees,

and costs would be awarded to the prevailing party in the event of such a dispute.

Debtors stopped paying rent on the properties and eventually vacated the premises. Creditors initiated an action in California state court for breach of both leases. Debtors counterclaimed, alleging breach of contract, breach of the covenant of good faith and fair dealing, inducement to breach a contract, negligent interference with contract, breach of the covenant of quiet enjoyment, and claims for declaratory relief, constructive eviction, and nuisance. The state court stayed the action pending arbitration.

The arbitrators assessed damages against Debtors for breaches of the leases; the damages included both unpaid past rent and future rent discounted to present value. The damages totaled nearly $1.3 million. The arbitrators also denied all of Debtors' claims against Creditors. Finally, the arbitrators awarded attorney fees of $137,250, plus arbitration fees of $56,934.18, to Creditors.

Thereafter, Debtors filed for Chapter 11 bankruptcy. Creditors filed a proof of claim for the arbitration award. Debtors objected, arguing that the entire arbitral award, including attorney fees and arbitration fees—not just the portions of the award representing past and future rent—should be limited by the cap contained in 11 U.S.C. § 502(b)(6). Creditors countered that the cap should apply only to past and future rent, but not to the fee award. The bankruptcy court sided with Creditors, allowing an amount that represented the arbitration award of past and future rent as limited by the statutory cap, plus the entire *uncapped* claim for attorney fees and arbitration fees. The district court affirmed, *Kupfer v. Salma (In re Kupfer)*, 526 B.R. 812 (N.D.

Cal. 2014), and Debtors timely appealed. The parties do not dispute the court's calculations. Instead, they disagree only about the legal question whether the fees must be capped or whether the fees may be claimed in addition to the capped amount of rent.

Under 11 U.S.C. § 502(a), claims are "deemed allowed, unless a party in interest . . . objects." If a party objects, the claim is allowed except, in relevant part, to the extent that,

> if such claim is the claim of a lessor for damages resulting from the termination of a lease of real property, such claim exceeds—
>
> (A) the rent reserved by such lease, without acceleration, for the greater of one year, or 15 percent, not to exceed three years, of the remaining term of such lease, following the earlier of—
>
>> (i) the date of the filing of the petition; and
>>
>> (ii) the date on which such lessor repossessed, or the lessee surrendered, the leased property; plus
>
> (B) any unpaid rent due under such lease, without acceleration, on the earlier of such dates[.]

*Id.* § 502(b)(6). The statute sets forth a category of claims that is subject to the cap ("claim[s] of a lessor for damages resulting from the termination of a lease") and then defines

the cap as the sum of all outstanding current rent and the greater of one year of remaining rent or 15% of the remaining term. In some circumstances, attorney fees and arbitration fees can be categorized as damages resulting from termination. *See, e.g.*, *In re PPI Enters. (U.S.), Inc.*, 228 B.R. 339, 349 (Bankr. D. Del. 1998), *subsequently aff'd*, *Solow v. PPI Enters. (U.S.), Inc.*, 324 F.3d 197 (3d Cir. 2003). To determine the extent to which that form of damages is capped, though, requires some explanation.

Historically, landlords could not recover future unpaid rent in bankruptcy, on the theory that such claims were contingent. *See Manhattan Props., Inc. v. Irving Tr. Co.*, 291 U.S. 320, 334–35 (1934) (describing 1898 bankruptcy law). Congress revisited that issue following the Great Depression, when it sought to reconcile "the need for landlords to be able to participate in the bankruptcy claim process and share in assets" with "the need not to allow the debtor's estate to be depleted through admission of extravagant claims for damages or unearned rent." *In re Best Prods. Co.*, 229 B.R. 673, 675–76 (Bankr. E.D. Va. 1998) (internal quotation marks omitted). The 1933 and 1934 amendments to the Bankruptcy Act introduced a new, but circumscribed, claim for unpaid rent. Those provisions permitted a "claim of a landlord for injury resulting from the rejection by the trustee of an unexpired lease of real estate or for damages or indemnity under a covenant contained in such lease," but limited the recoverable claim to the unpaid rent plus one year of rent reserved. Act of June 7, 1934, ch. 424, § 4(a), 48 Stat. 911, 923–24. With that law, "Congress intended to strike a balance between compensating the landlord for his loss together with a limited sacrifice to protect other creditors and the debtor's rehabilitation . . . ." *In re Heller Ehrman LLP*, No. 10-CV-03134 JSW, 2011 WL

635224, at \*4 (N.D. Cal. Feb. 11, 2011) (internal quotation marks omitted) (quoting *Vause v. Capital Poly Bag, Inc. (In re Vause)*, 886 F.2d 794, 802 (6th Cir. 1989)).

Holding that a statutory predecessor to the cap did not violate due process, the Supreme Court explained the purpose of capping a landlord's damages in bankruptcy: "It is well known that leases of business properties, particularly retail business properties, commonly run for long terms. The longer the term the greater the uncertainty as to the loss entailed by abrogation of the lease." *Kuehner v. Irving Tr. Co.*, 299 U.S. 445, 454 (1937) (construing former § 77B(b)(10) of the Bankruptcy Act, 11 U.S.C. § 207(b)(10) (1934)). The Court continued that "the rent reserved, broadly speaking, has some relationship to the value of the property and the value of a lease thereon" and, even with a cap, "the landlord stands a reasonable chance of restoring himself to as good a position as if the lease had not been terminated." *Id.* at 455.

The statutory cap was modified over the years, but did not change significantly until the 1978 enactment of the current law. Whereas the 1930s provision capped "injury resulting from the rejection" of a lease (a post-petition event) *as well as* "damages or indemnity under a covenant contained in such lease," 11 U.S.C. § 103(a)(9) (1976), the current provision caps only "damages resulting from the termination of a lease," 11 U.S.C. § 502(b)(6). Thus the older statute, by its text, may have capped a broader set of landlord-creditor claims than does the current statute. *See* Michael St. Patrick Baxter, *The Application of § 502(b)(6) to Nontermination Lease Damages: To Cap or Not to Cap?*, 83 Am. Bankr. L.J. 111, 142–44 (2009) (describing as "counterintuitive" the idea that this difference in text effected "no substantive change").

Since enactment of the current provision, courts have differed on the proper interpretation of its scope: that is, what damages "result[] from the termination of a lease"? 11 U.S.C. § 502(b)(6).

On one end of the spectrum, some courts have interpreted the provision expansively, as a kind of subject matter cap on *all* lease-related damages. For example, a Colorado bankruptcy court held that, "as a matter of law, the actual damage claim . . . for termination of the lease, whether for non-payment of rent, taxes, costs, attorney's fees, or other financial covenants such as the Residual Guarantee, are limited by the damage cap." *In re Storage Tech. Corp.*, 77 B.R. 824, 825 (Bankr. D. Colo. 1986). The court explained that the statute "does not qualify or in any way limit the type of damages involved. The damage cap applies to all damages, which are then arbitrarily capped and measured by rent reserved." *Id.* The Ninth Circuit's Bankruptcy Appellate Panel ("BAP") likewise held that

> rejection of the lease results in the breach of each and every provision of the lease, including covenants, and § 502(b)(6) is intended to limit the lessor's damages resulting from that rejection. . . . The distinction between past obligations under the lease and damages "caused" by the termination is incorrect because all damages due to nonperformance are encompassed by the statute.

*Kuske v. McSheridan (In re McSheridan)*, 184 B.R. 91, 102 (B.A.P. 9th Cir. 1995), *overruled in part by Saddleback*

*Valley Cmty. Church v. El Toro Materials Co. (In re El Toro Materials Co.)*, 504 F.3d 978 (9th Cir. 2007).

On the other end of the spectrum, the provision has been interpreted narrowly to cap claims for *future rent*, but to exclude all other damages, thereby permitting collateral claims to be asserted in full. Finding that cases applying the cap broadly "rest[] upon a somewhat tortured analysis of the relevant code sections" and are unsupported by legislative history, one court held that "the weight of authority in reported opinions where landlords have actually claimed damages for such items as maintenance and repairs is that these damages do *not* result 'from the termination of a lease of real property' and are therefore not subject to the cap of § 502(b)(6)(A)." *In re Best Prods. Co.*, 229 B.R. at 677–78.

We entered the debate by taking the middle ground in *In re El Toro Materials Co.*, 504 F.3d 978. There, the debtor, a mining company, sought to use the cap "to limit its liability for allegedly leaving one million tons of its wet clay 'goo,' mining equipment and other materials on Saddleback Community Church's property after rejecting its lease." *Id.* at 979. After an adversary proceeding in which the creditor-landlord alleged waste, nuisance, trespass, and breach of contract, the Ninth Circuit's BAP held that those damages were capped by § 502(b)(6) because they resulted from termination of the lease. *Id.* We reversed. Reviewing the provision's legislative history, we observed that "section 502(b)(6) of the 1978 Act was intended to carry forward existing law allowing limited damages for lost rental income." *Id.* at 980 (citing S. Rep. No. 95-989, at 63 (1978), *as reprinted in* 1978 U.S.C.C.A. 5787, 5849). We also reasoned from the statute's purpose: "The structure of the cap—measured as a fraction of the remaining term—suggests

that damages other than those based on a loss of future rental income are not subject to the cap." *Id.* Although "[i]t makes sense to cap damages for lost rental income based on the amount of expected rent," "collateral damages are likely to bear only a weak correlation to the amount of rent: A tenant may cause a lot of damage to a premises leased cheaply, or cause little damage to premises underlying an expensive leasehold." *Id.* "Metering these collateral damages by the amount of the rent would be inconsistent with the goal of providing compensation to each creditor in proportion with what it is owed." *Id.* We held that tort claims for waste, nuisance, and trespass "do not result from the rejection of the lease—they result from the pile of dirt allegedly left on the property." *Id.*

Summarizing its reasoning, *El Toro* established a test for determining which claims would be capped and which claims would be allowed in full:

> A simple test reveals whether the damages result from the rejection of the lease: Assuming all other conditions remain constant, would the landlord have the same claim against the tenant if the tenant were to assume the lease rather than rejecting it?

*Id.* at 981. Saddleback's tort claims would have been viable even if El Toro had never rejected its lease in bankruptcy, and Saddleback could have sued on them even if El Toro had remained a lessee in good standing. We concluded: "To the extent that *McSheridan* holds section 502(b)(6) to be a limit on tort claims other than those based on lost rent, rent-like payments or other damages directly arising from a tenant's

failure to complete a lease term, it is overruled." *Id.* at 981–82.

The Eighth Circuit's BAP adopted *El Toro* and then proposed its own test "for cases involving, not a post-petition rejection of a lease, but a pre-petition termination of a lease: Assuming all other conditions remain constant, would the landlord have the same claim against the tenant if the lease had not been terminated?" *Lariat Cos. v. Wigley (In re Wigley)*, 533 B.R. 267, 270–71 (B.A.P. 8th Cir. 2015). The court capped the creditor's claim for interest on the award of future rent, reasoning that, without termination of the lease, there would be no claim for future rent, and without an award for future rent, there is no interest. *Id.* at 272. Because the asserted damages for "unpaid [past] rent, common area maintenance, and late fees" had "accrued prior to termination of the lease and thus cannot be said to have resulted from termination of the lease, the related attorney fees, costs, and disbursements—and the pre-petition interest thereon—likewise cannot be said to have resulted from termination of the lease" and were not capped. *Id.* The court did not rule on the "attorney fees, costs, and disbursements" that did not derive from damages awarded under the lease or the debtor's guarantee of his bankrupt business, because there had been a dispute in the first instance about whether the landlord-creditor was entitled to those damages at all. The BAP remanded for a determination of both whether the landlord-creditor was entitled to those damages and, if so, whether they are subject to the cap. *Id.*

We agree with *Wigley*'s adaptation of our *El Toro* test in the context of a pre-petition lease termination: Assuming that all other conditions remain constant, would the landlord have the same claim against the tenant had the lease not been

terminated?  Applying that principle here, we conclude that the parties' and the courts' all-or-nothing approach is incorrect.

As noted, the arbitration giving rise to the disputed fees and costs concerned two leases.  The prevailing Creditors demanded both past-due rent and future rent.  Debtors brought a variety of counterclaims, alleging torts and breaches of contract committed by Creditors.  Even though Debtors did not prevail on those claims, they were litigated, and the fees and costs reflect that litigation.  The obligation to reimburse Creditors for fees and costs arose from covenants in the leases, but § 502(b)(6) does not cap damages resulting from every breach of contract—only those claims for "damages *resulting* from the *termination* of a lease." 11 U.S.C. § 502(b)(6) (emphases added).

Fees attributable to litigating Creditors' claims for future rent are capped, because such claims would not arise were the leases not terminated.  But the arbitration award also included damages for *past* rent, which Creditors could claim independent of termination; the fees attributable to that portion of the litigation are not capped.  The parties also litigated Debtors' numerous counterclaims.  To the extent that the counterclaims concerned ordinary alleged breaches, independent of a lease termination, the associated fees and costs are not capped, either.

On remand, the district court first must categorize all claims as either directly resulting from termination of the leases, or not.  The former are capped; the latter are not.  The court then must apportion the associated fees and costs accordingly.  The district court may decide whether to apportion the fees itself or to remand the case to the

bankruptcy court for apportionment. We also leave to the district court's or the bankruptcy court's discretion whether to take additional evidence or conduct further hearings in aid of the apportionment.

**VACATED and REMANDED.** The parties shall bear their own costs on appeal.