# United States Court of Appeals

### For the Eighth Circuit

_____

No. 16-4075

_____

In re:  Michael Robert Wigley,

*Debtor.*

------------------------------

Barbara Wigley,

*Interested Party - Appellant*,

v.

Michael Robert Wigley,

*Debtor - Appellee*,

Lariat Companies, Inc.,

*Creditor - Appellee.*

_____

Appeal from the United States Bankruptcy
Appellate Panel for the Eighth Circuit

_____

Submitted:  October 16, 2017
Filed: March 29, 2018

_____

Before SMITH, Chief Judge, MURPHY and COLLOTON, Circuit Judges.

_____

COLLOTON, Circuit Judge.

Barbara Wigley is the wife of Michael Wigley, a debtor in Chapter 11 bankruptcy proceedings. Barbara, who was not a party to the bankruptcy proceedings, seeks to appeal several orders of the bankruptcy court: (1) an order denying confirmation of Michael's plan of reorganization, (2) an order confirming Michael's subsequent plan of reorganization, and (3) an order granting stay relief to Lariat, one of Michael's creditors. The Eighth Circuit Bankruptcy Appellate Panel dismissed Barbara Wigley's appeal, holding that she was not a "person aggrieved" by the orders and therefore lacked standing. We agree and dismiss the appeal.

I.

On or about October 8, 2008, Baja Sol Cantina EP, LLC—a limited liability company that operated a Mexican restaurant in Eden Prairie, Minnesota—entered into a lease agreement with Lariat Companies, Inc. Michael Wigley, as the ninety percent member and chief manager of Baja Sol, personally guaranteed the company's obligations under the Lariat lease.

The Mexican restaurant was not profitable, and Baja Sol developed financial problems. On October 28, 2010, Lariat sued Baja Sol and Michael Wigley as guarantor in Minnesota state court. Lariat sought recovery of $245,975 in allegedly past-due rent plus approximately $2 million for future accruing rent. In July 2011, the state court entered summary judgment for Lariat against Baja Sol and Michael in the amount of $2.238 million.

While Lariat's action was underway but before the court had granted summary judgment, Michael transferred some of his assets to his wife, Barbara Wigley. After

Lariat had obtained the $2.238 million judgment in its lease action, Lariat and several other creditors sued Barbara Wigley in state court for fraudulent transfer of funds under the Minnesota Uniform Fraudulent Transfer Act, Minn. Stat. § 513.41 *et seq*. The creditors added Michael as a defendant in the fraudulent transfer action. The state court found the Wigleys jointly and severally liable for $795,098 of fraudulently transferred funds, plus interest, costs, and disbursements. Shortly thereafter, the Wigleys moved for amended findings in the state court action; the motion was pending when this appeal was filed.

In February 2014, Michael filed for Chapter 11 bankruptcy. Because Lariat's claim against Michael arises from a real property lease termination, the Bankruptcy Code, 11 U.S.C. § 502(b)(6), caps Lariat's recovery in these bankruptcy proceedings. Lariat may recover only a limited amount of future rent losses in bankruptcy. *See In re Wigley*, 533 B.R. 267 (B.A.P. 8th Cir. 2015).

Michael filed a Plan of Reorganization with the bankruptcy court. Under this plan, Michael proposed to pay unsecured creditors their allowed claims in full. The plan also contained a section entitled "Settlement and Release of Claims Against Barbara Wigley." This section provided:

> Confirmation of the Plan shall constitute approval of a settlement agreement under which all claims that the Debtor or any other representative of the estate could have asserted against Barbara Wigley as of the Confirmation Date, including but not limited to Avoidance Actions, shall be released in exchange for payment of the Barbara Wigley Settlement Payment, which shall be due no later than the Effective Date. The settlement and release provided for herein shall be binding on all creditors and other parties interest, whether or not entitled to receive payments or other distributions under the Plan.

The Plan defined "Barbara Wigley Settlement Payment" as a sum of $350,000. The plan, then, would settle the fraudulent transfer action in which the state court had

entered a judgment of $795,098 against the Wigleys for a $350,000 payment from Barbara.

Lariat objected, and the bankruptcy court denied confirmation of the Plan. The court concluded that although 11 U.S.C. § 1123(b)(3)(A) allows for settlements in a plan, the proposed settlement must be "fair and equitable." *See Protective Comm. for Indep. Stockholders of TMT Trailer Ferry, Inc. v. Anderson*, 390 U.S. 414, 424 (1968). Drawing on factors identified by this court in evaluating a settlement under Federal Rule of Civil Procedure 23(e), *see In re Flight Transp. Corp. Sec. Litig.*, 730 F.2d 1128, 1135 (8th Cir. 1984), the bankruptcy court concluded that the Barbara Wigley settlement was not fair. The court reasoned:

> This settlement would eliminate the Fraudulent Transfer Judgment by releasing [Barbara Wigley] for a discounted payment to the debtor and harm Lariat, the only entity other than Barbara Wigley affected by this proposed Plan provision. No other entities are affected as the Barbara Wigley Settlement Payment is unnecessary to fund the Plan.

The bankruptcy court eventually confirmed Michael's Fourth Modified Plan of Reorganization, which did not settle the fraudulent transfer action. The court also granted Lariat's motion for relief from the automatic stay imposed by 11 U.S.C. § 362(a), so that Lariat could "exercise its rights and remedies under applicable nonbankruptcy law with respect to continuing the pending fraudulent conveyance action . . . against Barbara Wigley based on prepetition events."

Barbara Wigley filed a notice of appeal, challenging (1) the bankruptcy court's order denying confirmation of the prior plan of reorganization that would have settled the claim against Barbara, (2) the court's order confirming the fourth modified plan of reorganization, and (3) the court's order granting Lariat relief from the stay to pursue the fraudulent transfer action against Barbara in state court. The Bankruptcy Appellate Panel held that Barbara Wigley lacked standing and dismissed her appeal.

We review this determination *de novo*. *See In re O & S Trucking, Inc.*, 811 F.3d 1020, 1023 (8th Cir. 2016).

## II.

"Standing in a bankruptcy appeal is narrower than Article III standing." *Opportunity Fin., LLC. v. Kelley*, 822 F.3d 451, 458 (8th Cir. 2016). This circuit and others have adopted an "essentially prudential" limitation on standing in the bankruptcy context given that bankruptcy litigation almost always involves the interests of numerous persons who are not formally parties to the litigation. *Travelers Ins. Co. v. H.K. Porter Co.*, 45 F.3d 737, 741 (3d Cir. 1995). The interest in "[e]fficient judicial administration requires that appellate review be limited to those persons whose interests are directly affected." *Id.* (quoting *In re Fondiller*, 707 F.2d 441, 443 (9th Cir. 1983)).

Accordingly, only a "person aggrieved" has standing to bring a bankruptcy appeal. *See Opportunity Fin., LLC*, 822 F.3d at 458. "'Person aggrieved' is, of course, a term of art: almost by definition, all appellants may claim in some way to be 'aggrieved,' else they would not bother to prosecute their appeals." *Id.* (quoting *Travelers Ins. Co.*, 45 F.3d at 741). One is a "person aggrieved" with standing to bring a bankruptcy appeal only if she has been "directly and adversely affected pecuniarily" by an order of a bankruptcy court. *Id.* (quoting *In re Peoples*, 764 F.3d 817, 820 (8th Cir. 2014)). A person has standing under this doctrine if a "bankruptcy court order diminishes the person's property, increases the person's burdens, or impairs the person's rights." *Id*. (quoting *In re Marlar*, 267 F.3d 749, 753 n.1 (8th Cir. 2001)).

Barbara argues that she is a person aggrieved by the bankruptcy court's order denying confirmation of Michael's proposed plan. She contends that if the court had confirmed the plan and thereby approved the settlement agreement, then once she

paid $350,000 to the bankruptcy estate, she would retain her interest in the assets that Michael had transferred to her and would avoid further litigation with her husband's creditors. Similarly, Barbara argues that the bankruptcy court's order confirming the fourth modified Plan, and the order granting Lariat relief from the stay, allow for "further prosecution" against her in state court.

Barbara's alleged harm based on potential litigation is the sort that we declared too indirect for bankruptcy standing in *Opportunity Finance*. There, the bankruptcy court ordered the consolidation of several Chapter 11 bankruptcy estates because the bankrupt entities were interrelated and had disregarded corporate boundaries. 822 F.3d at 455. Several lenders objected to the consolidation order, arguing that the order "impaired their rights by precluding potential affirmative defenses" in state court avoidance actions. *Id.* at 458. This court concluded that the lenders were not "persons aggrieved" for purposes of bankruptcy standing, even though the order arguably stripped them of an affirmative defense in the avoidance actions. *Id.* at 459-60. We emphasized that in general, "a bankruptcy court order allowing litigation to proceed against an adversary defendant does not make that defendant a party aggrieved." *Id.* at 458; *see also In re LTV Steel Co.*, 560 F.3d 449, 453 (6th Cir. 2009) ("[W]e are aware of no court that has held that the burden of defending a lawsuit, however onerous or unpleasant, is the sort of direct and immediate harm that makes a party 'aggrieved' so as to confer standing in a bankruptcy appeal.").

Here, the bankruptcy court declined to approve a settlement agreement that would have eliminated Barbara's pecuniary risk in the fraudulent transfer action and relieved her of the burdens of ongoing litigation. The court's order granting relief from the automatic stay allows Lariat to proceed with its fraudulent transfer action against Barbara. The orders, however, merely maintain the *status quo ante* as to Barbara. Barbara argues that her case is better than the appellants' in *Opportunity Finance*, because the order there caused only a "potential indirect impact of altering adversary defendants' affirmative defenses," whereas the orders here "directly denied

settlement relief or repose to [Barbara] on the merits." Barbara has it backwards. The orders in *Opportunity Finance* eliminated defenses provided by the Bankruptcy Code and at least arguably diminished the pre-existing rights of the persons who sought to appeal, *see* 822 F.3d at 461 (Bye, J., dissenting); the orders in this case simply disapproved a proposed settlement that arose only in the bankruptcy proceedings and maintained the previously existing state of affairs for Barbara. Whatever risk of liability and burden of litigation that Barbara might face in the fraudulent transfer action pre-existed Michael's bankruptcy proceeding. The bankruptcy court's orders do not increase Barbara's burdens or diminish her rights. *Id.* at 458 (majority opinion).

Aside from Barbara's inability to achieve a settlement, she complains that the bankruptcy court's orders "effectively foreclose" her from arguing in state court that the bankruptcy case eliminated Lariat's rights to pursue the fraudulent transfer action. She cites the bankruptcy court's order that the automatic stay is terminated, such that Lariat "may exercise its rights and remedies under applicable nonbankruptcy law with respect to continuing the pending fraudulent conveyance action." We express no view on the status of Lariat's rights, but we disagree with Barbara's premise. Nothing in the bankruptcy court's order prevents Barbara from arguing in state court that Lariat's rights have been altered in some way by the bankruptcy proceedings. The order establishes only that the automatic stay is lifted so that Lariat may pursue whatever rights and remedies are available to it.

*       *       *

For the foregoing reasons, Barbara Wigley is not a person aggrieved by the orders of the bankruptcy court, and she does not have standing to appeal those orders. The appeal is therefore dismissed.

_____